Clarence BYNES, Jr., et al.

v.

**AHRENKIEL SHIP MANAGEMENT, (U.S.), INC.**

**Civil Action No. 96–1571.**

United States District Court, W.D. Louisiana, Lake Charles Division.

Nov. 14, 1996.

Glyn J. Godwin, New Orleans, LA, for plaintiffs.

Michael H. Bagot, Jr., New Orleans, LA, for defendant.

*MEMORANDUM RULING*

EDWIN F. HUNTER, Jr., Senior District Judge.

Before the court is defendant, Ahrenkiel Ship Management (U.S.), Inc.'s ("Ahrenkiel") motion for summary judgment (doc. # 7).

Plaintiffs are seamen who were employed on two merchant vessels managed by Ahrenkiel. In October, 1994, while aboard the S.S. Lake Charles, plaintiffs were allegedly subjected to intense racial discrimination by other crew members. Plaintiffs complained to Ahrenkiel representatives, but no adequate remedial action was taken. In March and June, 1995, plaintiffs filed formal complaints with the Equal Employment Opportunity Commission. Upon receiving their respective Notice[s] of Right to Sue in March–April, 1996, plaintiffs filed the instant suit against Ahrenkiel seeking relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

In 1994 and 1995, a collective bargaining agreement was in effect between Ahrenkiel and the plaintiffs' union, District No. 4–NMU/MEBA ("Union").[1] Ahrenkiel contends that plaintiffs' Title VII claim is subject to mandatory arbitration; and thus, this court does not have subject matter jurisdiction over the Title VII claim. We disagree.

The pertinent provisions of the 1995–1999 collective bargaining agreement provide:

[T]he Company and the Union agree that no person ... employed by the Company shall be discriminated against because of race, color, sex, age, creed, and national or geographic origin ...

Art. III, § 4.

**Arbitration Procedure.** If any dispute or grievance arising under the terms of this Agreement is not adjusted and settled in the manner hereinafter provided, same may be submitted, by the Union or the Company as the case may be, within thirty (30) days from the time the grievance has been finally denied, to Arbitration.

Art. II, § 4(b).

No Covered Person shall have the right to demand arbitration under the provisions hereof, such right to arbitration being limited to the Union and the Company; and no Covered Person shall have the right to institute any action based upon this Agreement for wrongful discharge or because of

any breach of this Agreement, such right of action being limited to the Union and the Company; and if any claim is made at any time by any of the Covered Personnel against the Company or the Union under the provisions of this Agreement, any agreement or adjustment made by or between the Union and the Company with respect to such dispute shall be final and binding upon the Covered Personnel.

Art. II § 4(m).

We begin our inquiry with the Supreme Court's decision in *Alexander v. Gardner–Denver Company,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). There, the Court held that an individual may sue in federal court under Title VII notwithstanding that the discrimination claim had already been submitted to arbitration pursuant to a collective bargaining agreement, and decided adversely to the claimant. *Id. Alexander v. Gardner–Denver Company,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The Court further opined,

In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

*Gardner–Denver Company, supra.*

However, the Court took a noticeably different tack when it addressed the enforceability of an arbitration clause embedded in a securities registration application. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer,* the Court held that plaintiff must first arbitrate his ADEA claim as provided in his securities exchange registration applica-

---

**1.** One agreement lasted from April 21, 1994, until December 31, 1994. The second agreement extended from January 1, 1995, until December 31, 1999. The contracts' relevant provisions do not materially differ.

tion. *Id.*[2] The *Gilmer* Court took great pains to distinguish, but not eviscerate *Gardner–Denver* and its progeny. In so doing, the Court enumerated three distinguishing factors: 1) the *Gardner–Denver* line of cases focused on whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims; 2) the arbitration in *Gardner–Denver* occurred in the context of a collective bargaining agreement where there was collective representation, as opposed to direct bargaining and participation by the employee, and 3) those cases were decided under the Federal Arbitration Act, which reflects a "liberal federal policy favoring arbitration agreements." *Gilmer*, 500 U.S. at 35, 111 S.Ct. at 1657 (citation omitted).

For our present purpose, the principal provision of the collective bargaining agreement is Article II, section 4(m): "No Covered Person shall have the right to demand arbitration under the provisions hereof, such right to arbitration being limited to the Union and the Company ..." The only entity who could have pursued plaintiffs' discrimination claims through the grievance and arbitration process was the Union. In a January 31, 1995, letter, the Union filed a formal grievance with Ahrenkiel regarding minority discrimination. Defendant's Exhibit B. After meeting with Union representatives, Ahrenkiel declined to take further action. The Union also did not pursue the matter.

By the terms of the collective bargaining agreement, plaintiffs cannot unilaterally invoke arbitration. Moreover, unlike the securities registration cases, plaintiffs here did not individually consent to forego their remedy under Title VII in exchange for mandatory arbitration. They are at the mercy and whim of their union representatives who may be pursuing an agenda which benefits solely the majority of union members. In any event, the Union was required to present the issue to arbitration within 30 days after the grievance was finally denied. Art. II, Sec. 4(b). That time has elapsed with no action

having been taken. Plaintiffs are precluded by the collective bargaining agreement from compelling arbitration. As a practical matter, plaintiffs have exhausted the limited arbitration opportunity presented in the collective bargaining agreement.

The *Austin v. Owens–Brockway Glass Container, Inc.*, case cited by defendant, is inapposite. *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 432, —— L.Ed.2d —— (1996). Aside from its non-binding effect, there is no indication that the collective bargaining agreement in *Austin* prohibited union members from individually compelling arbitration. The clause in the case *sub judice* effectively removes any control from, or possibility that, an aggrieved union member could protect the particularly individualized rights enumerated under Title VII.

■ Finally, the collective bargaining agreement herein, is not subject to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* The FAA provisions do not "apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Collective bargaining agreements are "contracts of employment" within the meaning of the FAA exclusion. *Lincoln Mills of Ala. v. Textile Workers Union*, 230 F.2d 81, 86 (5th Cir.1956), reversed on other grounds, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *American Postal Workers Union v. U.S. Postal Service*, 823 F.2d 466, 473 (11th Cir.1987). At the very least, the members of the Union were workers engaged in interstate commerce, if not seamen. Accordingly, the FAA is inapplicable, and so is the concomitant federal policy favoring arbitration agreements.

■ In short, the factors utilized by the Supreme Court in *Gilmer*, and its progeny to distinguish *Gardner–Denver*, are absent here. Plaintiffs have every right to pursue

---

**2.** Following *Gilmer*, the Fifth Circuit reached the same, otherwise unremarkable holdings: *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir.1992) (compulsory arbitration provision in securities registration application encompassed

Title VII disputes); *Rojas v. TK Communications, Inc.*, 87 F.3d 745 (5th Cir.1996) (mandatory arbitration agreement in employment contract encompassed statutory rights).

their individual Title VII remedies in addition to any relief they might otherwise have received under the collective bargaining agreement. *Gardner–Denver, supra.*[3]

Defendant's motion for summary judgment (doc. # 7) is DENIED.

___

3. Today's decision in no way forecloses the parties' ability to voluntarily and individually consent to alternative dispute resolution. In fact, such resolution is encouraged. Plaintiffs themselves, have stated that they are willing to submit the matter to arbitration. However, any consent to do so would, of course, be independent of the collective bargaining agreement.