United States Court of Appeals,

Fifth Circuit.

No. 96-10670.

Janice Sue MILLER, Plaintiff-Appellant,

v.

PUBLIC STORAGE MANAGEMENT, INC., Storage Equities, Inc. and Public Storage, Inc., Defendants-Appellees.

Sept. 9, 1997.

Appeal from the United States District Court for the Northern District of Texas.

Before DAVIS, SMITH and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Appellant Janice Sue Miller appeals the district court's Order dismissing her case and compelling arbitration of her claims against Appellee Public Storage, Inc. We find the arbitration provision in Appellant's employment contract should be enforced under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, and affirm the district court.

BACKGROUND

Janice Sue Miller worked for Public Storage as a property manager. In August 1993, at a performance review, Public Storage presented Miller with an employment contract containing an arbitration clause providing any dispute arising over employment termination would be resolved by binding arbitration.[1] Although

---

[1]The arbitration agreement reads in part:

> *Arbitration.* In the event Employee's employment and this agreement are terminated, and Employee believes the termination was wrongful and/or violated any of Employee's

1

rights, Employee and Company agree to submit any dispute arising out of the termination of Employee's employment, including but not limited to claims of termination allegedly resulting from discrimination on the basis of race, sex, age, national origin, ancestry, color, religion, marital status, status of veteran of Vietnam era, physical or mental disability, medical condition, or any other basis prohibited by law, exclusively to final and binding arbitration before a neutral arbitrator.

If Employee and Company are unable to agree upon a neutral arbitrator, Company will obtain a list of arbitrators from a state or federal arbitration service. Employee (first) and then Company will alternately strike names from the list until only one name remains; the remaining person shall be the arbitrator. The arbitrator shall be bound by the qualifications and disclosure provisions and the procedures set forth in the 1989 Model Employment Arbitration Procedures of the American Arbitration Association and shall order such discovery as is appropriate to the nature of the claim and necessary to the adjudication thereof.

Arbitration proceedings shall be held in the city or town where Employee's employment services were performed, at the Company headquarters or any other location mutually agreed upon by Employee and Company. The arbitrator shall determine the prevailing party in the arbitration and the cost of the arbitration shall be paid by the nonprevailing party.

Employee and Company agree that this arbitration shall be the exclusive means of resolving any dispute arising out of Employee's termination and that no other action will be brought by Employee in any court or other forum. ONLY THE ARBITRATOR, NOT A JUDGE OR JURY, WILL DECIDE THE DISPUTE.

* * *

If Employee decides to dispute Employee's termination, Employee agrees to deliver a written request for arbitration to Company within one year of the date of Employee's termination and to respond within 14 calendar days to each communication regarding the selection of an arbitrator and the scheduling of a hearing and other matters related to arbitration proceedings. If Company does not receive a written request for arbitration from Employee within one year from the date of Employee's termination or if Employee does not respond to any communication from Company about the arbitration proceedings within 14 calendar days, Employee agrees Employee will have waved any right to raise any claims arising out the termination of Employee's employment with Company in arbitration or in any court or other forum. Limitations

2

she now claims she was given insufficient time to read the contract, she initialed each page of the document and signed the entire agreement.

In February 1995, Miller injured her arm at work and eventually took a medical leave of absence. However, after eight months of leave, she was still unable to return to work and was fired. Miller filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue. She then sued Public Storage alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and retaliation under the Texas Labor Code, §§ 451.001-.003.

Public Storage successfully moved to dismiss the suit and compel arbitration. The district court found that under the FAA, the arbitration agreement in Miller's employment contract was valid and enforceable. Miller appeals.

## DISCUSSION

Miller claims the district court erred in ordering arbitration as her employment contract was outside the scope of the FAA. She argues that the trial court misread the exclusion clause

---

set forth in this paragraph shall not be subject to tolling, equitable or otherwise.

> The arbitrator shall be permitted to award only those remedies in law or equity which are requested by the parties, appropriate for the claims and supported by credible, relevant evidence. The provisions of this arbitration provision shall survive the termination of this agreement and Employee's employment and shall remain in full force and effect thereafter.

in 9 U.S.C. § 1 of the FAA by narrowly construing the effect of that clause.

9 U.S.C. § 2 of the FAA makes arbitration agreements in certain contracts enforceable: "A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 1 defines contractual relationships excluded from the reach of the FAA. That section states in part: "[N]othing herein contained shall apply to contracts of employment of seaman, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

Miller argues that, despite this Court's decision in *Rojas v. TK Communications, Inc.,* 87 F.3d 745 (5th Cir.1996), arbitration clauses in employment contracts for workers generally engaged in interstate commerce are excluded from the scope of the FAA. Both Miller and the EEOC[2] claim *Rojas* conflicts with *Lincoln Mills v. Textile Workers Union,* 230 F.2d 81 (5th Cir.1956), *rev'd on other grounds,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

In *Rojas,* an employee sued alleging sexual harassment and retaliation under Title VII. Her employer sought to dismiss her claims on the ground they were subject to mandatory arbitration pursuant to an arbitration clause in her employment contract. The employee, a radio disc jockey, argued for a broad reading of the

_____

[2]The EEOC filed an amicus brief on behalf of Miller.

4

exclusion clause of the FAA, and maintained her claims were exempt from arbitration as she was a worker "engaged in interstate commerce."  87 F.3d at 747.

This Court disagreed, and specifically found the exclusion clause does not release all employment contracts from the constraints of the FAA. We found the exclusion applies only to employees "actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Id.* at 748 (quoting *Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592, 601 (6th Cir.1995)).  Noting that the majority of courts addressing this issue "have determined that the exclusionary language present in § 1 is to be narrowly construed," we stated Congress's failure to broaden the exclusion through statutory language persuaded us to read the § 1 exclusion narrowly.  *Id.* Any broader interpretation of that clause would undermine its significance.

In *Lincoln Mills,* an earlier case than *Rojas,* an employer and a union entered into a collective bargaining agreement that provided for arbitration to resolve disagreements between the parties.  The union subsequently filed several grievances with the employer, which the employer rejected after the collective bargaining agreement expired.  The employer then refused to grant the union's request that the grievances be submitted to arbitration;  the union sued to enforce the arbitration clause.

This Court held the collective bargaining agreement was a contract of employment within the meaning of the FAA, and excluded from the FAA's application.  *Lincoln Mills,* 230 F.2d at 86.  We

5

went on to state the FAA "does not authorize the judicial enforcement of a contractual undertaking to submit to arbitration grievances arising under a collective bargaining agreement." *Id.*

*Rojas* did not cite the holding in *Lincoln Mills.* However, *Lincoln Mills* did not specifically address the issue raised in *Rojas* and in this case:  whether the § 1 exclusion exemption for contracts of employment of "any other class of workers engaged in ... interstate commerce" should exclude all employment contracts from the FAA's reach, or only those employment contracts of workers directly engaged in transportation of goods in commerce (such as railroad employees and seaman, the two classes of workers the FAA mentions by name).  *Lincoln Mills* instead focused on the enforceability of an arbitration clause in a collective bargaining agreement, a completely different situation than that presented here.

The facts of *Lincoln Mills* demonstrate the differences between that case and *Rojas.*  *Lincoln Mills* raised concerns about how labor unions and large corporations, functioning pursuant to a collective bargaining agreement, could best resolve disputes about working conditions.  Whether the FAA applies in that situation presents quite different issues from those raised by the FAA's application in a conflict between an employer and an individual employee, when that employee signed a contract agreeing to settle disputes through arbitration.  For these reasons, the holding in *Lincoln Mills* that the FAA does not authorize arbitration in disputes arising under collective bargaining agreements does not conflict with the *Rojas*

6

holding that workers not directly involved in the transport of goods in interstate commerce are subject to the requirements of the FAA. We therefore find that, under *Rojas,* Miller is bound by the arbitration clause in her employment contract.

Miller also contends the FAA does not apply to a claim brought under the ADA. Miller claims the legislative history of the ADA shows Congress did not intend for arbitration clauses to prevent individuals from bringing suit for alleged ADA violations.

The explicit language of the ADA advocates the use of alternative dispute resolution:  "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under this chapter."  42 U.S.C. § 12212.  This language persuasively demonstrates Congress did not intend to exclude the ADA from the scope of the FAA.

As well, both the Supreme Court and this Court have found suits brought under the other anti-discrimination statutes are subject to the FAA. The Supreme Court held in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the FAA applies to claims brought under the Age Discrimination in Employment Act. As we noted earlier, this Court found in *Rojas* that claims brought under Title VII are also within the boundaries of the FAA. Considering that the ADA is part of the same broad remedial framework as the ADEA and Title VII, and that all the anti-discrimination acts have been subjected to similar analysis, *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th

7

Cir.1995) (finding ADA claims subject to the same method of proof as Title VII cases); *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 n. 4 (5th Cir.1993) (stating ADEA claims are also subject to the same method of proof as Title VII cases), we disagree that Congress intended to exempt the ADA from the requirements of the FAA. Refusing to enforce arbitration agreements solely in the context of the ADA would be an inconsistent departure from the traditional treatment accorded the anti-discrimination statutory scheme.

Miller next contends the circumstances surrounding her signing the employment contract render that contract unconscionable, and that the district court should have considered her arguments to that effect. However, as the fraud Miller alleges, fraud in the inducement, relates to the formation of her contract as a whole and not merely to the making of the arbitration agreement, under the FAA her claim is properly decided by an arbitrator. *R.M. Perez & Assocs., Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992).

Finally, we disagree that Miller's state claims for retaliation should have been heard by the district court, because Texas state law does not favor arbitration for personal injury or workers' compensation claims. The FAA preempts conflicting state antiarbitration law. *Southland Corp. v. Keating,* 465 U.S. 1, 16, 104 S.Ct. 852, 861, 79 L.Ed.2d 1 (1984). The district court properly found Miller's state law claims should go to arbitration.

For all the foregoing reasons, we AFFIRM the decision of the

district court.