**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CAROL A. BROWN,
Plaintiff-Appellant,

v.

TRANS WORLD AIRLINES; DONALD
OLDT; TRUDY ROUSCH-HEYWOOD,
Defendants-Appellees.

No. 96-1912

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-96-308)

Argued: July 8, 1997

Decided: October 6, 1997

Before NIEMEYER, MICHAEL, and MOTZ,
Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by published opin-
ion. Judge Niemeyer wrote the opinion, in which Judge Michael and
Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Sandra Martin Rohrstaff, COHEN, DUNN & CURCIO,
P.C., Alexandria, Virginia, for Appellant. Elliot H. Shaller, Washing-
ton, D.C., for Appellees.

_____

**OPINION**

NIEMEYER, Circuit Judge:

We are presented with the question of whether a collective bargaining agreement, which is governed by the Railway Labor Act and which requires arbitration of "disputes between the Union, employee, and the Company growing out of the interpretation or application of any of the terms of this Agreement," mandates arbitration of an employee's claim for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 and for violation of the Family and Medical Leave Act. Relying on our decision in Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875 (4th Cir.), cert. denied, 117 S. Ct. 432 (1996), the district court concluded that the collective bargaining agreement mandated arbitration of the employee's claims and therefore the employee was "precluded from filing suit in this Court." Because we believe that the district court misapplied Austin and erroneously interpreted the collective bargaining agreement to compel the arbitration of statutory claims, we reverse and remand the Title VII claim for further proceedings. For other reasons, however, we affirm the district court's dismissal of the claim under the Family and Medical Leave Act.

I

Carol Brown, a customer service agent in the Trans World Airlines baggage office at Washington National Airport, filed suit against Trans World Airlines ("TWA") and two of its supervisory employees, alleging that she had been sexually harassed and retaliated against for reporting the harassment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. Brown's complaint also alleged pendent state law claims for unlawful discrimination and intentional infliction of emotional distress. In her complaint, Brown alleged that the defendants harassed her through "unwanted touching, sexually offensive comments, and unwanted personal phone calls." Brown also alleged that when she complained about the harassment, her supervisor retaliated against her by ordering her to return to work or resign. When she did not return to work after several requests to do so, TWA terminated her employment.

2

During her employment, Brown was a member of the International Association of Machinists and Aerospace Workers (the "Union"), which had entered into a collective bargaining agreement with TWA. The collective bargaining agreement, which was governed by the Railway Labor Act, 45 U.S.C. § 151 et seq., provides in its preamble:

> No employee covered by this Agreement will be interfered with, restrained, coerced, or discriminated against by the Company, its officers, or agents, because of membership in or lawful activity on behalf of the Union, nor shall either the Company, its officers, or agents, or the Union, its officers, or agents, discriminate against any employee or member on account of race, color, creed, religion, sex (sexual harassment), age, handicap, national origin, or veteran status including veteran, Vietnam era veteran or special disabled veteran status. This paragraph reaffirms the long standing mutual practice of both of the parties to this Agreement.

(Emphasis added). The agreement also provides for a contractual dispute resolution procedure. Article 11 establishes a multi-step procedure for grievances, stating that "the procedure for presentation and adjustment of grievances that may arise between the Company and the Union with reference to interpretation or application of any provisions of this agreement shall be as set forth below." Article 12 provides that, following exhaustion of the grievance procedure steps, the parties are entitled to appeal to a board of arbitrators, "the System Board of Adjustment," which was created "for the purpose of adjusting and deciding disputes or grievances which may arise under the terms of this Agreement." It further gives the System Board of Adjustment jurisdiction "over disputes between the Union, employee, and the Company growing out of the interpretation or application of any of the terms of this Agreement," and it declares the decisions of the System Board of Adjustment to be "final and binding."

Arguing that the collective bargaining agreement required Brown to submit her claim to the grievance procedure and the System Board of Adjustment, TWA filed a motion for summary judgment. It maintained that the district court lacked subject matter jurisdiction or, alternatively, that Brown's complaint failed to state a state-law claim

3

upon which relief could be granted. In addition, with respect to Brown's Family and Medical Leave Act claim, TWA contended that the undisputed facts demonstrated that she had exceeded the maximum leave time provided by the Act.

The district court agreed with TWA and granted its motion for summary judgment, requiring that the case be resolved pursuant to the dispute resolution mechanisms of the collective bargaining agreement. The court also dismissed the individual defendants on the federal claims and declined to exercise supplemental jurisdiction over the state claims. In granting TWA's motion, the district court stated:

> Having reviewed the briefs submitted by counsel, the Court finds that the Fourth Circuit's opinion in Austin v. Owens-Brockway Glass Container, 78 F.3d 875 (4th Cir. 1996) controls this case and requires dismissal of the counts brought under Title VII and the FMLA. The issues underlying these counts are directly addressed by the Collective Bargaining Agreement ("CBA") which governs the terms and conditions of plaintiff's employment with defendant Trans World Airlines. The CBA requires arbitration of disputes which arise from the agreement, and, therefore, the plaintiff is precluded from filing suit in this Court.

This appeal followed.

II

Brown argues that the district court erred in relying on our decision in Austin because Austin was decided under the National Labor Relations Act, and not the Railway Labor Act. Because the collective bargaining agreement in this case was negotiated under the Railway Labor Act, she contends that the provisions of that Act and the Supreme Court's decision in Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246 (1994), require that statutory claims not be submitted to arbitration for resolution.

TWA argues, on the other hand, that Hawaiian Airlines decided only when a claim is preempted by the Railway Labor Act and not

4

when a statutory claim may be submitted to arbitration. It contends that the enforcement of arbitration agreements is controlled by the Supreme Court's decision in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), where the Court held that statutory claims may be the subject of an enforceable arbitration agreement. Id. at 26. TWA maintains that our decision in Austin is a proper extension of Gilmer and controls the disposition of this case.

The Railway Labor Act, which covers the airline industry and, in particular, the collective bargaining agreement in this case, prescribes a mandatory arbitral mechanism for the settlement of disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153 First (i). In Hawaiian Airlines, the Supreme Court defined the scope of that arbitral mechanism, holding that the Railway Labor Act's mandatory arbitration pertains only to "disputes involving the application or interpretation of a [collective bargaining agreement]." 512 U.S. at 255. In concluding that the Railway Labor Act did not preempt claims "independent of the collective bargaining agreement," the Court permitted a fired airline employee to pursue independent state law-based rights not to be fired in violation of public policy or in retaliation for whistle-blowing. Thus, Hawaiian Airlines instructs that the Railway Labor Act's arbitral mechanism does not mandate the arbitration of state-law claims that exist independently of the collective bargaining agreement.

Even if statutory claims exist independently of a collective bargaining agreement, however, those claims may be made the subject of an enforceable arbitration by agreement. In Gilmer, the Court held that congressional policy favors arbitration and that the arbitral forum is adequate for resolving statutory claims. The Court concluded that agreements to arbitrate statutory claims should be enforced unless the plaintiff demonstrates that Congress intended to preclude the waiver of a judicial forum for claims under a particular statute, either expressly or because of inherent incompatibility between the statute's goals and the arbitral forum. See Gilmer, 500 U.S. at 35 (holding that nothing in the ADEA indicates a congressional intent to preclude the arbitration of ADEA claims); see also Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 238, 242 (1987) (holding that agreement to arbitrate statutory claims under Securities Exchange Act and

5

RICO should be enforced since nothing in those statutes precludes the arbitration of claims); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 640 (1985) (holding that Sherman Act claims are arbitrable).

While all of these cases were decided under the Federal Arbitration Act, in Austin we applied the same principles to collective bargaining agreements even though such agreements are exempted from the Federal Arbitration Act, see 9 U.S.C. § 1; Domino Sugar Corp. v. Sugar Workers Local Union 392, 10 F.3d 1064, 1067 (4th Cir. 1993). In Austin, we held that an agreement to submit to arbitration an employee's claims for discrimination under Title VII and the Americans With Disabilities Act is enforceable and that nothing in either Title VII or the Americans With Disabilities Act indicated a congressional purpose to preclude arbitration of claims under those acts. Accordingly, we affirmed the district court's summary judgment that it lacked subject matter jurisdiction over such claims. See Austin, 78 F.3d at 886; see also O'Neil v. Hilton Head Hosp., 115 F.3d 272, 275 (4th Cir. 1997) (enforcing agreement to arbitrate claims under the Family and Medical Leave Act). Thus, we are bound to enforce any legally negotiated arbitration clause that obligates parties to submit claims under either Title VII of the Civil Rights Act or the Family and Medical Leave Act to arbitration.

The question of whether a collective bargaining agreement submits statutory disputes to arbitration is a matter of contract law, and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit" because "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643, 648-49 (1986) (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)); see also Alexander v. Gardner-Denver Co., 415 U.S. 36, 53-54 (1974) (discussing scope of arbitrator's authority and concluding that "the arbitrator has authority to resolve only questions of contractual rights, and this authority remains regardless of whether certain contractual rights are similar to, or duplicative of, the substantive rights secured by Title VII"). The determination of the arbitration provision's scope and meaning is for the court to resolve. See AT&T Techs., 475 U.S. at 649.

6

Accordingly, we turn to the language of the collective bargaining agreement governing Brown's employment, noting that it does include a prohibition against discrimination "on account of race, color, creed, religion, sex (sexual harassment), age, handicap, national origin, or veteran status." Moreover, it commits to arbitration all grievances that arise "with reference to interpretation or application of any provision" of the agreement. But while the agreement provides for arbitration of "disputes between the Union, employee, and the Company growing out of the interpretation or application of any of the terms of this Agreement," the agreement does not purport to submit any noncontract-based dispute or any statutory dispute to arbitration. In this regard, the language in the agreement before us is significantly narrower than the language construed in Gilmer, O'Neil, and Austin.

In Gilmer, as a condition of his employment, the plaintiff entered into a stockbroker's registration agreement with the New York Stock Exchange which stated that the plaintiff agreed to arbitrate "any dispute, claim, or controversy" arising between himself and his employer "that is required to be arbitrated under the rules, constitutions, or by-laws" of the New York Stock Exchange. The New York Stock Exchange in turn required arbitration of "any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative." Gilmer, 500 U.S. at 23 (emphasis added). The parties in Gilmer did not contest that this language was broad enough to encompass the arbitration of statutory claims for wrongful discharge under the ADEA, and the Court thus focused principally on the question of whether such a clause was enforceable. Accord O'Neil, 115 F.3d at 273 (enforcing arbitration of a claim under the Family and Medical Leave Act where provision in employee handbook signed by plaintiff required employee to submit to binding arbitration "complaints for any and all events that arise out of employment or termination of employment").

In Austin, we similarly concluded as a matter of contract interpretation that the plaintiff's claim under the Americans With Disabilities Act and Title VII of the Civil Rights Act of 1964 were covered by mandatory grievance procedures of the contract. The collective bargaining agreement in Austin provided that the parties "comply with all

7

laws preventing discrimination." It also provided that the agreement "shall be administered in accordance with the applicable provisions of the Americans With Disabilities Act," and specified that "any disputes under this Article as with all other Articles of this Contract shall be subject to the grievance procedure." We held that this language "specifically provides for final and binding arbitration on account of . . . Title VII for the gender claim, and the Disabilities Act for the disability claim." Austin, 78 F.3d at 879-80.

In this case, by contrast, instead of mandating arbitration of all employment-related disputes or, more specifically, of statutory disputes, the collective bargaining agreement submits to arbitration only disputes that "grow out of the interpretation or application of any of the terms of this Agreement." Thus the distinction between the language before us and the language in Gilmer, O'Neil, and Austin, distinguishes those cases. See Martin Marietta Corp. v. Maryland Comm'n on Human Relations, 38 F.3d 1392, 1402 (4th Cir. 1994) (distinguishing Gilmer on grounds that arbitration clause in Gilmer utilized "broad mandatory language" which "provided that Gilmer must arbitrate `any dispute, claim or controversy' arising with his employer," while agreement's arbitration clause in case before it was "more narrow, as it [was] written in permissive terms and encompasse[d] only grievances that involve[d] `interpretation or application' of CBA provisions"). Nothing in our holding precludes the parties from agreeing to arbitrate all disputes arising out of the employment relationship by which they would be agreeing to arbitrate not only contract-based disputes but also disputes based on statutory and common law. To do so, they would not need to mention in their agreement that a statute was the source of a dispute committed to arbitration as long as it were made clear that their agreement is sufficiently broad to include the arbitration of such disputes.

While it is true that the collective bargaining agreement in this case prohibits conduct similar to that prohibited by Title VII and by the Family and Medical Leave Act, none of the substantive provisions in the agreement reaches beyond the agreement to cover disputes arising under these laws. Thus, in interpreting the contract, there is no indication that the arbitrator would be bound to follow their interpretations. The defendants nevertheless argue that the anti-discrimination provisions in the collective bargaining agreement in this case incorporate,

8

sub silentio, an obligation to adhere to statutory anti-discrimination provisions.

Although the anti-discrimination language of Brown's collective bargaining agreement prohibits many of the types of discrimination covered by existing laws, it cannot be said to be congruent with them. For example, the contractual provision prohibits discrimination, but it does not prohibit retaliation because of the enforcement of the anti-discrimination provision. Yet retaliation is the basis for a separate cause of action under Title VII and one that Brown seeks to vindicate in this case.

In addition to the lack of congruence between the actions prohibited by the collective bargaining agreement and those prohibited by statute, we reject an interpretation that obliterates the distinction between statutory and contractual claims based on a commonality of underlying facts. The possibility that the facts underlying Brown's claims of statutory violation might also give rise to a claim for breach of the anti-discrimination provision of the collective bargaining agreement is not itself sufficient to subsume Brown's statutory claims into the contract's arbitration clause or otherwise transform the statutory claims into an unpleaded breach of contract action. The Supreme Court has more than once held that factual similarity between claims does not create identity for purposes of a requirement for arbitration:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.

Alexander, 415 U.S. at 49-50. Similarly, in Hawaiian Airlines, the Court held that the fact that a public law analysis might involve attention to the same factual considerations as a contractual determination did not render the two dependent for purposes of determining whether the public law claim involved interpretation or application of a collective bargaining agreement. See 512 U.S. at 261-62.

9

Thus, although the facts that make out a Title VII claim might well also make out a breach of contract claim under the contractual anti-discrimination provision in this case, the statutory right remains fully independent. The collective bargaining agreement has neither incorporated the statutory duties into its substantive provisions by reference nor made the statutory claim into one involving application of the contract. Accordingly, we conclude that the parties to this contract did not in fact agree to submit Brown's statutory claims to the arbitral forum.

III

In its motion for summary judgment, TWA also presented undisputed facts to support its contention that Brown did not have a claim under the Family and Medical Leave Act. It notes on appeal that Brown conceded that she had taken leave in excess of that required to be given by the Act and that the uncontested facts show that Brown never submitted medical documentation of her illness, as the Act permits employers to require. See 29 U.S.C.§ 2613(b). Because Brown failed to present evidence creating a genuine dispute of material fact on her entitlement to relief under the Family and Medical Leave Act, we affirm the district court's grant of summary judgment as to that count. Although the district court did not find it necessary to rule on this ground because it dismissed the case for arbitration, we may nevertheless affirm the grant of summary judgment on any ground supported by the record. See Bowling v. Wellmore Coal Corp., 114 F.3d 458, 460 (4th Cir. 1997).

For the foregoing reasons, we reverse the summary judgment with respect to Brown's Title VII claims and affirm with respect to her Family and Medical Leave Act claims.

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED FOR FURTHER PROCEEDINGS

10