Jerome BROWN, Plaintiff,

v.

ABF FREIGHT SYSTEM, INC., Defendant.

No. Civ.A. 3:97CV283.

United States District Court, E.D. Virginia, Richmond Division.

Feb. 17, 1998.

Thomas H. Roberts, Richmond, VA, for Plaintiff.

---

Floyd W. Kirby, Jr., Blackwell N. Shelley, Jr., Davis & Kirby, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

PAYNE, District Judge.

On April 21, 1997, the plaintiff, Jerome Brown, filed this civil action against ABF Freight System, Inc. ("ABF"), alleging a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* and the Virginians with Disabilities Act ("VDA"), Va. Code §§ 51.5–40 *et seq.* ABF, in its Answer filed on June 30, 1997, asserted the affirmative defense of lack of subject matter jurisdiction. Specifically, ABF argued that the collective-bargaining agreement ("CBA") between ABF and the plaintiff's union divested the Court of jurisdiction and required submission of the plaintiff's federal claim to arbitration pursuant to procedures outlined in the CBA.

On September 18, 1997, the Court, relying on *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996), dismissed the federal claim for lack of subject matter jurisdiction. Subsequently, on October 6, 1997, the United States Court of Appeals for the Fourth Circuit decided *Brown v. Trans World Airlines,* 127 F.3d 337 (4th Cir.1997). On October 21, 1997, Brown moved the Court to reconsider its September 18, 1997 Order, arguing that resolution of the issue whether to dismiss the ADA claim for lack of subject matter jurisdiction should be controlled by the legal principles enunciated in *Trans World,* not those on which *Austin* was decided.

Presently pending before the Court is Brown's motion for reconsideration. For the reasons which follow, Brown's motion for reconsideration is denied.

## STATEMENT OF FACTS

On September 23, 1974, Brown began working for Carolina Freight Carrier as a truck driver. In 1994, Brown was diagnosed with diabetes, necessitating that Brown use insulin. When informed of Brown's medical condition, the United States Department of Transportation restricted Brown's driver's license, which, in effect, disqualified Brown from driving commercial vehicles in interstate commerce. Brown, however, received a waiver from the Commonwealth of Virginia, thereby enabling him to transport certain goods solely within the Commonwealth.

In September 1995, ABF acquired Carolina Freight Carrier and, thereafter, the merged companies operated under the ABF company name. At the time of the acquisition, Brown actively bid for, was awarded, and then performed certain dock and yard work, which involved no interstate transport of cargo. Brown continued to perform these duties until November 30, 1995, the date he received notice of his termination. Brown, who alleges that he still is qualified to perform dock and yard duties within the borders of Virginia, charges that the Terminal Manger informed him that he was being discharged because of his disability.

After filing a timely charge with the Equal Employment Opportunity Commission ("EEOC"), Brown filed a grievance with the Teamsters Local Union No. 592 ("Union"), alleging a violation of Article 53 of the CBA. While the grievance was pending, the EEOC issued a reasonable cause determination by letter dated November 13, 1996 and, then, on March 14, 1997, Brown received a right-to-sue letter from the EEOC. Believing that his termination violated both the ADA and the VDA, Brown abandoned the grievance process and sought legal recourse in this Court.

Brown, however, is bound by the CBA, Article 37 of which is entitled "Non-discrimination" and provides that:

The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, age, or national origin nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, age, or national origin or engage in any other discriminatory acts prohibited by law. This Article also covers

employees with a qualified disability under the Americans with Disabilities Act.

Article 8, Section 1, of the CBA is designated National Grievance Procedures and it provides that "[a]ll grievances or questions of interpretations arising under this . . . Agreement . . . shall be processed" in accordance with the outlined grievance procedure. If the National Grievance Committee is deadlocked as to a grievance, it is "automatically referred to the National Arbitration Panel, whose decision shall be final and binding on all parties."

The crux of ABF's defense of want of subject matter jurisdiction was, and remains, that the Fourth Circuit's decision in *Austin* requires dismissal because the grievance and arbitration procedure outlined in the CBA is the sole remedy for Brown's claim for disability discrimination. Finding this argument persuasive, the Court dismissed Count I of the Complaint by Order entered September 18, 1997.

Brown, however, as grounds for the motion for reconsideration, points to *Trans World Airlines*, the most recent decision by the Fourth Circuit on the topic of mandatory arbitration of statutory claims by way of collective-bargaining agreements. Brown posits that the *Trans World Airlines* decision, not *Austin*, is dispositive of the jurisdictional issue. Brown's motion for reconsideration calls upon the Court to determine, once again, whether, by virtue of the non-discrimination clause contained in the CBA, Brown has committed to the arbitral forum the statutory rights secured unto him by the ADA.

## DISCUSSION

### A. SUBJECT MATTER JURISDICTION

Resolution of Brown's motion for reconsideration is found in decisions of the Supreme Court and the Fourth Circuit. To those, we now turn.

#### 1. Supreme Court Precedent

In *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 38–39, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the plaintiff, an African–American union employee, alleged that his discharge from employment was the result of racial discrimi-

nation. According to the provisions of a collective-bargaining agreement between the defendant-employer and the plaintiff's union, the plaintiff filed a grievance. *Id.* 415 U.S. at 39.

Under the terms of the collective-bargaining agreement, the defendant "agree[d] that there shall be no discrimination against any employee on account of race, color, religion, sex, national origin, or ancestry." *Id.* 415 U.S. at 39 n. 2. The arbitration clause, however, covered "differences aris[ing] between the Company and the Union as to the meaning and application of the provisions of this [collective-bargaining] Agreement." *Id.* at 39 n. 3.

Before the arbitration hearing on the grievance, however, a charge of racial discrimination was filed with the EEOC on the plaintiff's behalf. *Id.* at 42. The arbitrator concluded that the plaintiff was terminated for just cause. *Id.* at 43. Thereafter, the plaintiff, having received a right-to-sue letter from the EEOC, filed an action in federal court, alleging a violation of Title VII. *Id.* The district court granted the defendant's motion for summary judgment and dismissed the plaintiff's action. *Id.* The United States Court of Appeals for the Tenth Circuit affirmed the decision of the district court. *Id.*

Reversing the Tenth Circuit, the Supreme Court, in *Gardner–Denver*, emphasized the difference between rights acquired under a contract and the independent statutory rights accorded by federal law. *See id.* 415 U.S. at 49–50. The Court explained that the grievance procedure outlined in the collective-bargaining agreement provided a means to vindicate the plaintiff's contractual rights, whereas Title VII bestowed upon employees a statutory right to be free from illegal discrimination in the workplace, which was not subsumed by the contractual agreement. *See id.* The Supreme Court explained: "The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from *permitting both rights to be enforced in their respectively appropriate forums.*" *Id.* 415 U.S. at 50 (emphasis added). The Court, then, went on

to hold that "the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices" was best reconciled "by permitting an employee to *pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII." Id.* at 59–60 (emphasis added).

Seventeen years later, the Supreme Court decided *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer*, the plaintiff, a non-union stockbroker, was required, as a condition of his employment, to register with the New York Stock Exchange ("NYSE"). *Gilmer*, 500 U.S. at 23. The registration application with the NYSE contained an arbitration clause, which provided for mandatory arbitration of "any controversy between [the employee] and the [employer] arising out of the employment or termination of employment of [the employee]." *Id.* at 23. At the age of sixty-two, Gilmer's employment was terminated and, thereafter, he filed a federal civil action, alleging a violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq. Id.* at 23–24.

The employer-brokerage firm moved to compel arbitration of the ADEA claim, which the district court, relying on *Gardner–Denver*, denied. *Id.* 500 U.S. at 24. The United States Court of Appeals for the Fourth Circuit reversed the district court, "finding 'nothing in the text, legislative history, or underlying purposes of the ADEA indicating a congressional intent to preclude enforcement of arbitration agreements.'" *Id.* (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 895 F.2d 195, 197 (4th Cir.1990)).

Affirming the Fourth Circuit, the Supreme Court emphasized that, in contracting to arbitrate a statutory right, "a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* 500 U.S. at 26 (quotation mark omitted) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Because Gilmer contractually agreed to arbitrate his statutory rights, the Supreme Court held that the agreement would be enforced, unless Gilmer could "show that Congress intended to preclude a waiver of a judicial forum for ADEA claims." *Id.* Concluding that Gilmer had not shown "that Congress, in enacting the ADEA, intended to preclude arbitration of claims under that Act," the Court, accordingly, found the arbitration clause in the NYSE registration application enforceable. *Id.* 500 U.S. at 35.

Importantly, *Gilmer* distinguished *Gardner–Denver* and its progeny on three grounds:

> *First*, [the *Gardner–Denver* line of authority] did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims.... *Second*, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case. *Finally*, those cases were not decided under the FAA, which, as discussed above, reflects a liberal federal policy favoring arbitration agreements. Therefore, those cases provide no basis for refusing to enforce Gilmer's agreement to arbitrate his ADEA claim.

*Id.* (emphasis added) (internal citation and quotations marks omitted).

### 2. Fourth Circuit Precedent: *Austin* and *Trans World Airlines*

A divided panel of the Fourth Circuit, in *Austin v. Owens–Brockway Glass Container. Inc.*, held that an employee could commit enforcement of her statutory rights to binding arbitration as provided in a collective-bargaining agreement between an employer and its employees' union. In that respect, the *Austin* majority held:

> Whether the dispute arises under a contract of employment growing out of [sic]

securities registration application, a simple employment contract, or a collective bargaining agreement, an agreement has yet been made to arbitrate the dispute. So long as the agreement is voluntary, it is valid, and we are of opinion it should be enforced.

*Austin,* 78 F.3d at 885.

Article 38 of the collective-bargaining agreement at issue in *Austin* provided as follows:

Fair Employment Practice and Equal Opportunities 1. The Company and the Union will comply with all laws preventing discrimination against any employee because of race, color, religion, sex, national origin, age, handicap, or veteran status.

2. This Contract shall be administered in accordance with the applicable provisions of the Americans with Disabilities Act....

3. Any disputes under this Article as with all other Articles of this Contract shall be subject to the grievance procedure.

*Id.* at 879. The grievance procedure, under the collective bargaining agreement in *Austin,* specifically provided for arbitration. And, the *Austin* court, in holding that the plaintiff was required under the collective-bargaining agreement to arbitrate her Title VII and ADA claims, relied specifically on the import attributed by the Supreme Court to the arbitration of federal claims. In that respect, the Supreme Court explained in *Gilmer:*

[A]ttacks on [the efficacy] of arbitration "res[t] on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would be complainants," and as such, they are "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes."

*Gilmer,* 500 U.S. at 30 (third alteration in original) (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 481, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)).

Significantly, in *Austin,* the Fourth Circuit observed that "*Gilmer* thus *rejects* the principal concern in ... *Gardner–Denver* ... that arbitration is an 'inappropriate forum' for the resolution of Title VII statutory rights." *Austin,* 78 F.3d at 880 (emphasis added). Notwithstanding the rather obvious distinctions of *Alexander v. Gardner–Denver* which were made in *Gilmer,* the decision in *Austin* clearly construes *Gilmer* largely to have vitiated *Gardner–Denver,* at least as *Gardner–Denver* is construed by the Fourth Circuit.

*Austin,* however, has not inspired the other circuits to sound the death knell of *Gardner–Denver* and its progeny. The Courts of Appeals for the Sixth, Seventh, Tenth, and Eleventh Circuits, for example, have rejected the result, reached by *Austin,* and have, instead, concluded that *Gardner–Denver* and subsequent cases remain unaffected by *Gilmer. See Penny v. United Parcel Serv.,* 128 F.3d 408, 414 (6th Cir.1997); *Brisentine v. Stone & Webster Eng'g Corp.,* 117 F.3d 519, 526 (11th Cir.1997); *Harrison v. Eddy Potash, Inc.,* 112 F.3d 1437, 1452 (10th Cir.), *petition for cert. filed,* —— U.S. ——, 118 S.Ct. 2364, —— L.Ed.2d —— (1997); *Pryner v. Tractor Supply Co.,* 109 F.3d 354, 363 (7th Cir.), *cert. denied,* —— U.S. ——, ——, 118 S.Ct. 294, 295, 139 L.Ed.2d 227 (1997). Indeed, "the majority view is that [*Gardner–Denver*] and its progeny 'remain good law and that statutory employment claims are independent of a collective bargaining agreement's grievance and arbitration procedures.'" *Harrison,* 112 F.3d at 1453. Although *Austin* has been the subject of some criticism, it remains binding precedent in this circuit.

Criticism notwithstanding, the Fourth Circuit recently confirmed its adherence to *Austin* in *Brown v. Trans World Airlines.* There, the Fourth Circuit interpreted the collective-bargaining agreement at issue to mean "that the parties to [the agreement] did not in fact agree to submit [the plaintiff's] statutory claims to the arbitral forum." *Trans World Airlines,* 127 F.3d at 342. In so doing, the Fourth Circuit looked to the specific language of the collective-bargaining agreement, which provided that:

No employee covered by this agreement will be interfered with, restrained, coerced, or discriminated against by the Company ... because of membership in or lawful

activity on behalf of the Union, nor shall either the Company ... or the Union ... discriminate against any employee or member [of the Union] on account of race, color, creed, religion, sex (sexual harassment), age, handicap, national origin, or veteran status including veteran, Vietnam era veteran or special disabled veteran status.

*Id.* at 338. The collective-bargaining agreement in *Trans World Airlines* also furnished a contractual dispute resolution mechanism. Specifically, the agreement provided for mandatory final and binding arbitration for "disputes between the Union, employee, and the Company growing out of the interpretation or application of any of the terms of this Agreement." *Id.* at 339.

Although in *Trans World Airlines* the Fourth Circuit affirmed adherence to *Austin*, the Court of Appeals distinguished *Austin* on the ground that the arbitration clause in the collective-bargaining agreement in *Trans World Airlines* was narrower than the one it had construed in *Austin*. In particular, the Fourth Circuit, in *Trans World Airlines*, explained that "[t]he question of whether a collective bargaining agreement submits statutory disputes to arbitration is a matter of contract law, and 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Id.* at 340 (citing *AT & T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 648–49, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (citation omitted)). Then, distinguishing the contract language in both *Gilmer* and *Austin* from that in *Trans World Airlines*, it the Fourth Circuit observed that:

[Here], by contrast, instead of mandating arbitration of all employment-related disputes or, more specifically, of statutory disputes, the collective bargaining agreement submits to arbitration only disputes that "grow out of the interpretation or application of any of the terms *of this Agreement.*" Thus the distinction between the language before us and the language in *Gilmer* ... and *Austin*, distinguishes those cases.

*Id.* at 341 (emphasis in original). *Trans World Airlines*, however, did not rest solely on contract interpretation. In fact, citing *Gardner–Denver*, the Fourth Circuit "reject[ed] an interpretation" of the collective-bargaining agreement in *Trans World Airlines* "that obliterate[d] the distinction between statutory and contractual claims based on a commonality of underlying facts." *Id.* at 342. The Fourth Circuit observed:

The possibility that the facts underlying Brown's claims of statutory violation might also give rise to a claim for breach of the agreement's antidiscrimination provision is not itself sufficient to subsume Brown's statutory claims into the contract's arbitration clause or otherwise transform the statutory claims into an unpleaded breach of contract action.

*Id.* This precedent will guide the assessment of Brown's motion for reconsideration.

### 3. Reconciliation of *Gardner–Denver*, *Gilmer, Austin* and *Trans World Airlines*

 Because "[t]he question of whether a collective bargaining agreement submits statutory disputes to arbitration is a matter of contract law," *Brown*, 127 F.3d at 340, the inquiry begins by examining the language of the CBA.

 Article 37, entitled non-discrimination, provides that:

The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, age, or national origin nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, age, or national origin *or engage in any other discriminatory acts prohibited by law.* This Article also covers employees with a qualified disability under the Americans with Disabilities Act.

Article 8, Section 1, of the CBA provides that "[a]ll *grievances* or questions of interpretations arising under this ... Agreement ... shall be processed" as set forth in the contractually specified grievance and arbitration procedure. The question presented is

whether the contractual language in this CBA is controlled by the decisions in *Gilmer* and *Austin* or by the decision in *Trans World Airlines*. For the reasons which follow, it appears that *Gilmer* and *Austin* dictate the result in this action because the language is significantly different than the language construed in *Trans World Airlines*, and is more akin to that in *Gilmer* and *Austin*.

In *Gilmer*, the plaintiff agreed, in his registration application to the NYSE, to *"arbitrate any dispute, claim or controversy . . .* that is required to be arbitrated under the rules, constitutions or by-laws" of the NYSE. *Gilmer*, 500 U.S. at 23 (emphasis added). NYSE Rule 347 required arbitration of *"[a]ny controversy* between a registered representative and any member or member organization *arising out of the employment or termination of employment* of such registered representative." *Id.* (emphasis added) (alteration in original). Faced with a similar contractual provision, the Fourth Circuit, in *Austin*, concluded, as a matter of contract interpretation, that the contractual language "specifically provides for final and binding arbitration on account of . . . Title VII for the gender claim, and the [Americans with] Disabilities Act for the disability claim." *Austin*, 78 F.3d at 879–80. The collective-bargaining agreement in *Austin*, for example, obligated the employer and union to "comply with *all laws* preventing discrimination" *Austin*, 78 F.3d at 879 (emphasis added). Moreover, the agreement provided that "[t]his Contract shall be administered in accordance with the applicable provisions of the Americans with Disabilities Act" and committed *"[a]ny disputes"* to the mandatory grievance procedures outlined under the provisions of the agreement. *Id.* at 879–80 (emphasis added).

In *Trans World Airlines*, however, the collective-bargaining agreement contained language in its preamble which prohibited the employer and the employees' union from "discriminat[ing] against any employee or [union] member on account of race, color, creed, religion, sex[,] . . . age, handicap, national origin, or veteran status." *Trans World Airlines*, 127 F.3d at 338. But, unlike *Austin*, the agreement committed to arbitration only those "disputes that grow out of the *interpretation or application* of any of the terms of [the agreement]." *Id.* at 341 (emphasis added).

In this action, unlike *Trans World Airlines*, Brown, through his Union, agreed to submit to arbitration *"[a]ll grievances* or questions of interpretation arising under this . . . Agreement." This broad language requires arbitration not only of alleged violations of Brown's contractual rights arising under the collective-bargaining agreement but also alleged violations of statutory rights, compliance with which is the subject of Article 37 of the CBA.[1]

Under Article 37, the plaintiff's Union "agreed not to discriminate against any individual . . . because of such individual's race, color, religion, sex, age, or national origin . . . *or engage in any other discriminatory acts prohibited by law.*" That provision is a general agreement not to perform any act violative of any antidiscrimination law. The absence from that provision of language a reference to specific statutory claims that are to be submitted to binding arbitration does not mean that the CBA fails to require arbitration of statutory discrimination claims. *See Rudolph*, 952 F.Supp. at 318. To the contrary, that is the principal distinction between *Austin* and *Trans World Airlines*. An examination of the collective-bargaining agreement in *Austin* informs the decision here.

In *Austin*, the collective-bargaining agreement contained an arbitration clause which required binding arbitration for disputes "un-

---

1. The language of the CBA is markedly different than that in *Trans World Airlines*, which only committed to arbitration those disputes arising "with reference to *interpretation or application* of any provision" of the collective-bargaining agreement. *Trans World Airlines*, 127 F.3d at 339 (emphasis added); *see also Rudolph v. Alamo Rent A Car, Inc.*, 952 F.Supp. 311, 312 (E.D.Va. 1997) (emphasis added) (concluding that an employment contract did not require submission of the plaintiff's statutory claims where the contractual provided that "[i]f I claim that Alamo has violated this [contract], I agree that the dispute shall be submitted to and resolved through binding arbitration. . . .").

der [the] articles of this Contract." The Fourth Circuit concluded, in *Austin,* that the agreement required arbitration of the plaintiff's statutory claims because another provision of the agreement expressly bound the employer to comply with *"all laws* preventing discrimination against any employee because of race, color, religion, sex, national origin, age, handicap, or veteran status." *Austin,* 78 F.3d at 879. As Judge Doumar recently explained, the employer's express contractual duty to ensure observance of the plaintiff's statutory rights under the federal employment laws generally was the rationale used by the Fourth Circuit in *Austin* to interpret the agreement there at issue to require arbitration of both contractually based and statutory claims. *See Rudolph,* 952 F.Supp. at 318.

As a matter of contractual interpretation, the Court must conclude that the provisions of the CBA in this action most closely resemble the language construed in *Gilmer* and *Austin.* Thus, the parties to this contract have agreed to submit Brown's statutory claims to the arbitral forum. In accordance with the Fourth Circuit's direction, *see Austin,* 78 F.3d at 886, this Court expresses no opinion as to whether Brown "has abandoned [his] claim or otherwise rendered it unenforceable by choosing to attempt to litigate the same rather than arbitrate it."

### CONCLUSION

For the foregoing reasons, the plaintiff's Motion for Reconsideration is denied and the claim under the ADA is dismissed without prejudice. Additionally, the Court agrees with the plaintiff that his claim under the Virginians with Disabilities Act should likewise be dismissed without prejudice. Having concluded that the Court lacks subject matter jurisdiction over this action, the defendant's motion for summary judgment as to Count II of the Complaint and the plaintiff's motion for leave to amend are dismissed as moot.

It is so ORDERED.