**Sandra J. MARSHALL, Plaintiff,**

v.

**BELL ATLANTIC NETWORK
SERVICES, INC.,
Defendant.**

No. Civ.A. 97–373–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

May 6, 1998.

Lori K. Grant, Fitzpatrick & Associates, Washington, DC, for Plaintiff.

Keith Fischler, Bell Atlantic Network Services, Arlington, VA, for Defendant.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Before the Court are defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment and plaintiff's Motion to Stay the Court's Decision on Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment.

### I.

In this action, plaintiff Sandra J. Marshall sues her employer Bell Atlantic Network Services, Inc. ("BANSI") under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), alleging that BANSI failed to provide reasonable accommodation for her disability, a serious back injury diagnosed as chronic lumbar radiculopathy and failed back syndrome, and also that it retaliated against her for requesting such accommodation. Plaintiff's employment is governed by a collective bargaining agreement ("CBA") between her union, the Communications Workers of America (the "CWA"), and BANSI. The CBA provides that:

> neither the Company nor the Union shall unlawfully discriminate against any employee because of such employee's race, color, religion, sex, age, disability, or national origin; or because of his activities in behalf of the Union; or because he is a disabled veteran or a veteran of the Vietnam era.

CBA Art. 11, § 1. The CBA also establishes grievance and arbitration procedures and prohibits BANSI and union members from "attempt[ing] by means other than the grievance procedure to bring about the settlement of any issue which is properly a subject for disposition through the grievance or arbitration procedures." CBA Art. 12, § 2(f). Finally, the CBA provides that the Union "may submit [a] grievance to arbitration" if the grievance involves "[t]he interpretation or application of any of the terms of this Agreement not specifically excluded from arbitration." CBA Art. 12, § 4.

Plaintiff filed a grievance with the Union concerning the defendant's alleged discrimination on December 27, 1995, but the Union denied it and declined to submit the matter to arbitration. Lacking further options under the CBA, plaintiff then filed a charge with the Equal Employment Opportunity Commission ("EEOC") on September 6, 1996, alleging that defendant had violated the ADA by failing to make reasonable accommodation for her disability. The EEOC dismissed plaintiff's charge and issued a Right to Sue letter. Plaintiff asked the EEOC to vacate its dismissal and reopen the matter, arguing that the Commission had failed to conduct a proper investigation. By a February 18, 1997, letter, the EEOC agreed to reopen the matter. Plaintiff then filed this action on March 18, 1997. The action was stayed to allow the EEOC to complete its investigation. The EEOC completed its investigation on January 6, 1998, and issued a second dismissal and Right to Sue letter. The action is once again on this Court's active docket.

### II.

Defendant argues that plaintiff's Complaint must be dismissed because she is bound to resolve her discrimination claim solely through the mandatory grievance and arbitration procedures set forth in the CBA. In the alternative, defendant asks this Court for summary judgment in its favor as to plaintiff's claim. Plaintiff in turn asks this Court to stay resolution of defendant's Motion because of the Supreme Court's recent decision to grant certiorari in the case of *Wright v. Universal Maritime Serv. Corp.*, No. 96–2850, 1997 WL 422869, *1 (4th Cir. July 29, 1997) *cert. granted,* —— U.S. ——, 118 S.Ct. 1162, 140 L.Ed.2d 174 (1998). We consider each Motion in turn.

### III.

■ Defendant bases its Motion to Dismiss on *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875, 879 (4th Cir. 1996), in which the Fourth Circuit held that agreements to arbitrate statutory discrimination claims are enforceable. The *Austin* court relied extensively on *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), in which the Supreme Court explained that "[by] agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to

their resolution in an arbitral, rather than a judicial forum," and that "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." 500 U.S. at 26, 28, 111 S.Ct. 1647; *see also Austin*, 78 F.3d at 879. The *Austin* court drew further support from the "well-recognized policy of federal labor law favoring arbitration of labor disputes," in particular language in the ADA that "[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under this chapter." *Austin*, 78 F.3d at 879, 881. The *Austin* court concluded that the plaintiff had specifically agreed to arbitrate her ADA and Title VII claims where the underlying agreement provided that it "shall be administered in accordance with the applicable provisions of the Americans with Disabilities Act," directed the parties to "comply with all laws preventing discrimination," and mandated binding arbitration for disputes arising under the agreement. *Austin*, 78 F.3d at 879.

The Fourth Circuit recently expanded on *Austin* in *Brown v. TWA*, 127 F.3d 337 (4th Cir.1997), holding that a CBA which did not explicitly include statutory discrimination claims did not bar the plaintiff from pursuing her Title VII and FMLA claims in federal court. *See id.* at 341–42. Accordingly, the parties in this case have focused their arguments on whether the CBA more closely resembles the *Austin* agreement, which specifically addressed statutory claims, or the *Brown* agreement, which did not. We need not decide that issue, however, because neither case appears to govern a situation where, as here, the protections of an arbitral forum are not available because the CBA does not mandate arbitration of a grievant's discrimination claims. Instead, the CBA provides that the Union "*may* submit [a] grievance to arbitration." CBA Art. 13, § 4(a) (emphasis added). In our case, the Union has refused to do so, even though plaintiff has properly grieved her claim as required by the CBA. As such, it cannot be said that plaintiff has exchanged her statutory rights to sue in federal court for the equally competent protections of an arbitral

forum, as was the case in *Gilmer* and *Austin*. *See Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647; *Austin*, 78 F.3d at 879. Indeed, were we to grant defendant's motion, plaintiff would lose substantive statutory rights in favor of the limited contractual protections of a grievance procedure. *See id.* Furthermore, because plaintiff has already pursued the CBA's grievance procedures to their terminus, precluding plaintiff from suing in this Court would effectively silence her discrimination claim without giving her the opportunity to present it in either a judicial or an arbitral forum. As such, the CBA does not allow the plaintiff in this case the opportunity to "effectively vindicate" her statutory rights, and does not serve the "remedial and deterrent" functions behind the ADA. *See Gilmer*, 500 U.S. at 28, 111 S.Ct. 1647.

Finally, although there is an established federal policy in favor of arbitration, we know of no language in the ADA or other federal statutes that endorses stripping a plaintiff of her statutory rights in favor of a grievance procedure like that found in the defendant's CBA. Although arbitration might well have provided an equally viable forum for the resolution of plaintiff's statutory claim, the CBA does not mandate arbitration, and plaintiff does not on this record have an option to arbitrate her claim.

Defendant has brought to our attention an unpublished district court opinion involving the exact same CBA, which implicitly rejects our reasoning. *See Turner v. Bell Atlantic–Virginia*, Civ. Action No. 96–0791–R (W.D.Va. May 5, 1997) In that case, a plaintiff covered by the same Bell Atlantic CBA at issue here sought to bring an ADA claim in federal court after she grieved her claim and was denied arbitration. The district court held that the plaintiff was precluded from suing in federal court, and was limited to the terms of the grievance procedure, effectively extinguishing her claim. *Id.* at 4–5. However, although the court cited *Austin* for the general proposition that voluntary agreements to arbitrate will be upheld, it provided no explanation as to why the plaintiff could be denied both arbitration and adjudication in favor of the grievance procedure. *Id.* Furthermore, *Turner* was decided before the

Fourth Circuit's crucial decision in *Brown*, and did not take into account the reasoning of that case. Accordingly, *Turner* does not influence our decision here.

For the all of the reasons set forth above, therefore, we conclude that plaintiff may pursue her ADA claim in this Court, and that defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment[1] must accordingly be DENIED.

■ In the Second Motion before us, plaintiff asks for a stay because of the Supreme Court's recent grant of certiorari in *Wright v. Universal Maritime Serv. Corp.*, No. 96–2850, 1997 WL 422869, *1 (4th Cir. 1997) *cert. granted* —— U.S. ——, 118 S.Ct. 1162, 140 L.Ed.2d 174 (1998). In *Wright*, which appears to follow *Austin*, the Fourth Circuit found that a collective bargaining agreement which required mandatory arbitration of employment disputes was sufficiently broad as to include the plaintiff's ADA claim. The *Wright* opinion does not address whether a plaintiff loses her right to sue under the ADA when she is party to a CBA that does not guarantee the option to arbitrate the claim, which is the issue before this court. As such, the Supreme Court's decision to review *Wright* does not merit a stay of this action, and plaintiff's Motion to Stay the Court's Decision on Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment will also be DENIED. An appropriate order will issue.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.

---

1. Because discovery has not been completed and the parties did not focus on the evidentiary basis of plaintiff's claims, it is premature to consider the summary judgment aspect of defendant's motion.