**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DAVID M. BEDWELL,
Plaintiff-Appellant,

v.                                                            No. 97-1688

MACK TRUCKS INCORPORATED,
Defendant-Appellee.

DAVID M. BEDWELL,
Plaintiff-Appellee,

v.                                                            No. 97-1689

MACK TRUCKS INCORPORATED,
Defendant-Appellant.

Appeals from the United States District Court
for the District of South Carolina, at Rock Hill.
Matthew J. Perry, Jr., Senior District Judge.
(CA-95-685-10BC)

Submitted: January 29, 1999

Decided: February 24, 1999

Before WILKINS, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

Sharon McCain Rickborn, Columbia, South Carolina, for Appellant. Henry S. Knight, Jr., CONSTANGY, BROOKS & SMITH, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

David M. Bedwell filed suit against Mack Trucks, Inc. (Mack), alleging discrimination on the basis of disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C.§§ 12101-12213 (1994), and in retaliation for filing a claim with the South Carolina Human Affairs Commission. Relying on our decision in Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875 (4th Cir. 1996), the district court concluded that a collective bargaining agreement (CBA) mandated arbitration of Bedwell's claims; therefore, Bedwell was precluded from filing suit in the district court. After a de novo review, with all inferences drawn in Bedwell's favor, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), we affirm in part, reverse in part, and remand for further proceedings.

In 1974, Bedwell began working at Mack's Macungie, Pennsylvania, assembly plant and transferred to Mack's Winnsboro, South Carolina, assembly plant in 1987. During his employment, Bedwell was a member of the United Automotive, Aerospace, and Agricultural Implement Workers Union (the Union), which had a CBA with Mack. Article 5 of the CBA provided a multi-step dispute resolution procedure in which any dispute, not settled by the grievance procedure, could be submitted to arbitration or be considered settled on the basis of the last answer and not subject to further consideration. Moreover, Article 5 provided that, following exhaustion of the grievance proce-

2

dure steps, the parties had thirty days to place a grievance into arbitration and the decision of arbitration was "final and binding."

In February 1995, Bedwell, who had work restrictions due to a shoulder and back injury, filed suit in district court against Mack alleging disability discrimination for failing to accommodate his disability and terminating his employment while he was on sick leave. Mack moved for summary judgment. Mack asserted that Bedwell's claims were subject to mandatory arbitration under the CBA and that Bedwell failed to allege any material facts to support his claims. Because Bedwell failed to pursue his claims under the grievance/arbitration procedure, Mack maintained that Bedwell was precluded from filing suit in federal court.

The district court granted summary judgment to Mack based upon Bedwell's failure to pursue his claims under the grievance/arbitration procedure outlined in the CBA. The court held that the agreement subjected Bedwell's claims to mandatory arbitration. Thus, the court found that Austin precluded Bedwell from bringing the lawsuit. Bedwell appealed the denial of summary judgment. Mack filed a cross-appeal alleging that the district court erred in failing to address the merits of Bedwell's claims. We granted Mack's unopposed motion to submit the case for a decision on the briefs without oral argument.

Bedwell argues that the district court erred by relying on our decision in Austin because Austin was wrongly decided. He contends that the ADA and the Supreme Court's decision in Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), require that statutory claims not be submitted to arbitration for resolution. Conversely, Mack argues that the enforcement of arbitration agreements is controlled by the Supreme Court's decision in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), in which the Court held that statutory claims may be the subject of an enforceable arbitration agreement. See Gilmer, 500 U.S. at 26. Mack maintains that our decision in Austin is a proper extension of Gilmer and controls the disposition of this case.

The Supreme Court has recently addressed the issue of whether an arbitration clause in a CBA precludes an employee from bringing an

3

ADA action in federal court. See Wright v. Universal Maritime Serv. Corp., ___ U.S. ___, 67 U.S.L.W. 4013 (U.S. Nov. 16, 1998) (No. 97-889). In Wright, the Supreme Court did not resolve the question of the validity of a union-negotiated waiver of a federal forum for statutory claims, such as the ADA; instead it held that a statutory claim "is not subject to a presumption of arbitrability." Wright, 67 U.S.L.W. at 4015. The CBA must have a "clear and unmistakable" waiver of the covered employees' rights to a judicial forum for federal claims of employment discrimination to mandate arbitration of the claim. The Court found that the right to a judicial forum "is of sufficient importance to be protected against less-than-explicit union waiver in a CBA." Id. at 4016.

In Wright, the Court examined the entire agreement to determine if it held a clear and unmistakable waiver. First, the Court looked to the language of the arbitration clause to determine if it contained any specific language regarding what claims must be arbitrated. Next, the Court looked to the remainder of the CBA to determine whether it contained an "explicit incorporation of statutory antidiscrimination requirements." Id. The Court also discussed whether provisions in the CBA calling for the agreement to cover all matters of employment, and that the agreement was not to violate any federal or state law, operate to incorporate federal antidiscrimination laws into the agreement. The Court found that these provisions did not mandate that compliance with the ADA was a contractual commitment subject to the arbitration clause. Id.

Similar analysis can be utilized in this case. Article 5, Section 8 of the CBA covering the grievance procedure applies to"[a]ny employee . . . having a grievance." Section 11(d) of Article 5, the arbitration clause, states that "[a]ny dispute which is not settled by the foregoing grievance procedure, may be submitted to arbitration. . . . Any grievance which is not submitted to arbitration . . . shall be considered settled on the basis of the last answer and not subject to further consideration (emphasis omitted)."[1]  This language is very broad and similar to the arbitration clause addressed in Wright.

_____

[1] The record does not contain a specific provision stating what claims must be submitted through the grievance procedure. However, neither party points to a specific section of the CBA that provides the information.

4

Looking at the CBA as a whole, it addresses discrimination in two separate sections. First, Article 26 provides that the company and the union will not discriminate in employment matters because of "race, creed, color, national origin, political affiliation, union affiliation, sex, marital status, physical handicap or age."**2** Article 26 also states that "[t]he company and the Union agree that they will support and implement the governmental anti-discrimination programs."

Also incorporated into the Master Agreement is a letter from Mack's Executive Vice President for Administration regarding establishment of a voluntary equal employment opportunity program. The letter states that the program was established in part to "emphasize the contractual grievance procedure for relief of alleged violations of (equal opportunity)." (J.A. 291). The letter also states that one purpose of the newly established equal employment opportunity committees is to "avoid multiplicity of litigation in many forums simultaneously." One of the functions of the Joint Corporate/International Committee was to review and discuss ways and means of encouraging use of the "grievance procedures as the exclusive contractual method to resolve claims of denial of equal opportunity rights." (J.A. 292). This letter acknowledges that employees with equal opportunity concerns have more than one forum to lodge their complaints. It also implies that employees are not required to use the grievance procedure as committees were formed to encourage its use. At best, this letter is ambiguous regarding any arbitration requirements for discrimination claims.

Finally, the CBA contains similar provisions to those discussed in Wright declaring that the CBA is intended to cover all matters of employment and that the CBA shall not violate any federal or state law. Here, Article 5, Section 12(e) provides that the Arbitrator's function is to interpret and apply the CBA. The CBA includes antidiscrimination language. However, although Mack and the Union agreed to support and implement governmental antidiscrimination programs, this is not the same as making compliance with the ADA a contractual commitment subject to arbitration and does not constitute a clear and unmistakable waiver of a judicial forum for discrimi-

_____

**2** This antidiscrimination provision is similar to those found in Austin and Gardner-Denver.

5

nation claims. See Wright, 67 U.S.L.W. at 4016. This court has held that similar antidiscrimination provisions in a CBA do not obligate the parties to adhere to statutory antidiscrimination laws. An employee's contractual rights under a CBA are distinct from an employee's statutory rights. See Brown v. Trans World Airlines, 127 F.3d 337, 341-42 (4th Cir. 1997).

For the foregoing reasons, we hold that the CBA in this case does not contain a clear and unmistakable waiver of Bedwell's right to a judicial forum for his ADA claim. We reverse the portion of the district court order granting summary judgment to Mack and remand for further proceedings on the merits of Bedwell's claims.

Mack filed a cross-appeal alleging that the district court erred in failing to consider the merits of Bedwell's claims. Mack argued that Bedwell failed to establish entitlement under the ADA. The district court properly did not review the merits of Bedwell's claims because it concluded that it did not have jurisdiction over them. In a footnote, the court stated that if this court found that Bedwell is entitled to proceed before it, the merits of his claim would be addressed. Therefore, that portion of the order is affirmed.

AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED

6